IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| PAMELA MADSEN,<br><br>Petitioner,<br><br><br><br><br><br>vs.<br><br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255<br><br><br><br><br><br>Civil Case No. 2:12-CV-460 TS<br><br>Criminal Case No. 2:11-CR-127 TS |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.[1]  For the reasons discussed below, the Court will deny Petitioner's Motion.

_____

[1]Petitioner's Motion also requested a stay of her sentence pending resolution of the Motion, which the Court previously denied.  *See* Docket No. 4.

## I.  BACKGROUND

On February 16, 2011, Petitioner was named in a nine-count Indictment charging her with mail fraud and money laundering.  As is detailed in the Presentence Report, Petitioner engaged in a long-running scheme to defraud her employer out of over $1,000,000.

Petitioner pleaded guilty to one count of mail fraud and one count of money laundering on January 12, 2012, and sentencing was set for April 9, 2012.  As Petitioner's ineffective assistance claims revolve around the actions of her counsel at the time of sentencing, the Court will provide the necessary background to understand Petitioner's claims, especially as it relates to Petitioner's claims of abuse.

Prior to sentencing, a Presentence Report was prepared.  The Presentence Report fully described Petitioner's offense, including the impact her actions had on her victims.  The Presentence Report also contained the following statement concerning Petitioner's acceptance of responsibility:

> The defendant has accepted full responsibility for her actions in the instant offense by stating she and her now ex-husband were having some financial problems. The defendant stated her husband liked to spend money on unnecessary items. She and her husband began talking about her taking money from her then employer.  The defendant initially took $200 and then it escalated as the months passed to larger amounts.  She stated her employer never had any raised suspicions and she knew the amount was becoming larger with each month.  The defendant then told her husband she didn't want to do it any longer and he encouraged her to continue the illegal behavior.  Ms. Madsen then had enough and left her husband, job, and life one night and moved to Texas because she was sick of stealing the money on the advice of her husband.  The defendant stated that she was sorry for her actions and knew it was wrong.[2]

---

[2]Docket No. 3, at 5.

2

The Presentence Report also contained a statement from Petitioner's sister.  Petitioner's sister stated that Petitioner's "ex-husband was physically and mentally abusive, and she believed encouraged [Petitioner] to steal the money from the victim business."[3]  Petitioner's sister believed that Petitioner's ex-husband "reaped great benefits from the [Petitioner's] actions, which included some items bought with the stolen money."[4]

Petitioner's counsel filed a detailed Sentencing Memorandum for the Court's consideration prior to the sentencing hearing.  In that Sentencing Memorandum, counsel described Petitioner as "a hard-working young woman with a promising future."[5]  As part of the Sentencing Memorandum, Petitioner's counsel discussed Petitioner's relationship with her now ex-husband.  Counsel stated that Petitioner's ex-husband "became more controlling with each passing year" that he "threatened and belittled Ms. Madsen.  And at times, Mr. Madsen resorted to using physical force against Pamela."[6]

Petitioner's counsel also described how Petitioner's ex-husband "spent money freely," causing Petitioner to engage in criminal conduct in order to keep up with their expenses.[7]

---

[3]*Id*. at 8-9.

[4]*Id*. at 9.

[5]Criminal Case No. 2:11-CR-127 TS, Docket No. 49, at 1.

[6]*Id*. at 2.

[7]*Id*.

Counsel stated that Petitioner's ex-husband repeatedly encouraged Petitioner to engage in this behavior until it "soon snowballed out of control."[8]

> Eventually, Ms. Madsen felt trapped by her own bad choices and trapped by her bad relationship with her husband.  She had no idea how to escape from the hole she had dug for herself.  As the control and abuse increased in her marriage, Ms. Madsen feared what would happen if she suddenly stopped bringing home so much money.  And she feared what would happen when the company eventually discovered the embezzlement.  But she also felt guilty, conflicted, and overwrought about continuing her theft.  She felt trapped, desperate, and scared.  She wanted it all to end.  So she left.  She left her husband.  She left her job.  She left her home and all of her possessions, taking only her dog and her goat.[9]

In addition, Petitioner's counsel discussed Petitioner's better qualitites including "her lifetime of hardwork and acts of helpfulness to others."[10]  Counsel attached several letters from family and friends extolling Petitioner's good virtues and describing her various charitable works.  Counsel also explained that Petitioner was extremely remorseful and regretted betraying the trust of her victims.  Because of these things, and other factors detailed in the Sentencing Memorandum, Petitioner's counsel asked for a below-guideline sentence of 18 months.

At the sentencing hearing, Petitioner's counsel stressed that Petitioner was "willing and able to accept whatever this Court imposes as a sentence," but made an argument for a downward

---

[8] *Id.*

[9] *Id.* at 3.

[10] *Id.* at 4.

4

variance from the guidelines.[11]  However, counsel did not "feel the need to regurgitate" what had been stated in the Presentence Report and the Sentencing Memorandum.[12]

Petitioner was given an opportunity to speak at her sentencing and she apologized to her victims.[13]  Petitioner made no other statement.

The Court then heard from three victims of Petitioner's conduct, who all detailed the devastating impact of Petitioner's conduct on them.  After the victims spoke, Petitioner's counsel briefly responded to their statements, pointing out a possible misstatement by one of the victims.[14]

After hearing all of this, the Court imposed a sentence of 46 months imprisonment, the high-end of the guideline range.  The Court found that Petitioner was "very calculating" and appeared "to have been very cold hearted," as she continued to engage in that activity despite her awareness of the devastating affects of her actions.[15]  The Court noted the letters it had received on Petitioner's behalf and the good deeds reflected therein, but found that it was "hard to give too much consideration to someone who was stealing money from some people and giving it to others."[16]  The Court stated that "[i]t almost appears that [Petitioner] undertook . . . seemingly

---

[11]Docket No. 2:11-CR-127 TS, Docket No. 62, at 6.

[12]*Id*. at 5.

[13]*Id*. at 8.

[14]*Id*. at 23-24

[15]*Id*. at 24.

[16]*Id*. at 25.

unselfish efforts simply to benefit herself and those close to her."[17]  The Court also noted the letters and statements from the victims explaining the terrible impact Petitioner's crimes had on them.  Based on these things, and considering all of the factors under 18 U.S.C. § 3553, the Court imposed a sentence of 46 months.

Judgment was entered on April 10, 2012.  Petitioner did not pursue direct appeal. However, she timely filed the instant Motion on May 10, 2012.

## II.  DISCUSSION

Petitioner asserts two basic claims in her Motion: (1) that she received ineffective assistance of counsel; and (2) that her sentence is unconstitutional.  The Court will address each claim below.

## A.     INEFFECTIVE ASSISTANCE

Petitioner argues that her counsel was ineffective for failing to further develop the alleged abuse Petitioner suffered at the hands of her ex-husband which, Petitioner argues, was at least part of the reason she engaged in and continued to engage in her crimes.  Petitioner further argues that counsel failed to impeach the victims who testified at the sentencing hearing and failed to adequately object to the Presentence Report.  Finally, Petitioner makes a claim of "cumulative ineffectiveness."

The Supreme Court has set forth a two-pronged test to guide the Court in making a determination of ineffectiveness of counsel.  "To demonstrate ineffectiveness of counsel, [Petitioner] must generally show that counsel's performance fell below an objective standard of

---

[17]*Id.*

6

reasonableness, and that counsel's deficient performance was prejudicial."[18]  A Court is to review Petitioner's ineffective assistance of counsel claim from the perspective of her counsel at the time he or she rendered the legal services, not in hindsight.[19]  In addition, in evaluating counsel's performance, the focus is not what is prudent or appropriate, but only what is constitutionally compelled.[20]  Finally, there is "a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption."[21]

Reviewing the record under this standard, the Court must reject Petitioner's ineffective assistance claim.  Petitioner's claim that counsel did not fully develop the record concerning her alleged abuse is simply not supported by the record.  The Presentence Report contained information suggesting that Petitioner was abused and engaged in her illegal behavior, at least in part, at the behest of her ex-husband.  Counsel's Sentencing Memorandum went even further, discussing the mental and physical abuse Petitioner endured and linking that abuse to Petitioner's criminal activity.  The decision by counsel not to dwell on this at the sentencing hearing, and instead highlight Petitioner's better qualities, was clearly a tactical one that does not constitute deficient performance.  As the Supreme Court has stated: "When counsel focuses on some issues

---

[18]*United States v. Lopez*, 100 F.3d 113, 117 (10th Cir. 1996) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 690 (1984)).

[19]*Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998).

[20]*United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984).

[21]*United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2002).

to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."[22]

Petitioner seems to suggest that Petitioner's counsel could have and should have done more to highlight the alleged abuse. This is not the standard for an ineffective assistance claim. Rather, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."[23] Petitioner falls well short of this showing and, considering the record as a whole, the Court cannot find that counsel's performance was deficient.

Nor has Petitioner demonstrated any prejudice as a result of counsel's alleged failure to fully develop the record concerning Petitioner's history of abuse. It is clear that the information concerning the alleged abuse was before the Court but, nevertheless, the Court sentenced Petitioner to the high-end of the guideline range based on her cold and calculating conduct. Petitioner has provided nothing to suggest that, had counsel further emphasized the alleged abuse, the result of the sentencing hearing would have been different.

Petitioner next argues that counsel did not adequately impeach the victims who testified at the sentencing hearing. Petitioner's Affidavit states that "some victims" said "some things which I previously had no idea about and which I don't think I did."[24] Specifically, the victims

---

[22]*Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (per curiam).

[23]*Strickland*, 466 U.S. at 687.

[24]Docket No. 2, ¶ 39.

stated that Petitioner stole some files and crashed their computers.[25]  In response, Petitioner states that she doesn't "believe it was me who did those things."[26]  However, only a few paragraphs earlier, Petitioner acknowledges that she took actions to conceal her crimes and took $30,000 worth of checks when she left.[27]  Thus, the exact nature of her concealment is irrelevant and Petitioner's vague statement that she did not think she did those things attributed to her by the victims does not warrant relief.

Even if there was a basis to impeach the victims, it was well within the wide range of reasonable professional assistance for Petitioner's counsel to decide not to impeach the victims who testified at the sentencing hearing.  Such a tactical decision does not constitute deficient performance.  Further, Petitioner has provided nothing to suggest that the result would have been different had her counsel impeached the victims.

Petitioner further contends that counsel did not adequately object to the Presentence Report because it did not adequately address her abuse history.  For substantially the same reasons set forth above, the Court must reject this claim.  There was information in the Presentence Report concerning the alleged abuse and her husband's influence on her criminal activity, and this information was supplemented by Petitioner's counsel in the Sentencing Memorandum.  Therefore, the Court cannot find that counsel's performance was deficient.

---

[25]*Id.*

[26]*Id.*

[27]*Id.* at ¶ 28.

Further, Petitioner has provided nothing suggesting the outcome would have been different had additional information related to her alleged abuse been contained in the Presentence Report.

Finally, Petitioner asserts that her counsel was cumulatively ineffective. Because the Court must reject Petitioner's ineffective assistance claims, the Court must also reject this claim.

B.      UNCONSTITUTIONAL SENTENCE

Petitioner next argues that her sentence is unconstitutional. Specifically, Petitioner argues that her sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment.

The Supreme Court has ruled that because "a final judgment commands respect," it has "long and consistently affirmed that a collateral challenge may not do service for an appeal."[28] Generally, the Tenth Circuit has held that § 2255 cannot be used to test the legality of matters which should have been raised on appeal.[29] Further, if an issue is not raised on direct appeal, the defendant "is barred from raising the issue in a § 2255 motion proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting [from] the error or a fundamental miscarriage of justice [if] the claim is not considered."[30]

In this case, Petitioner did not raise her disproportionality argument at sentencing and, as stated, she did not pursue direct appeal. As a result, she may not raise this claim in her § 2255

_____

[28]*United States v. Frady*, 456 U.S. 152, 165 (1982).

[29]*United States v. Khan*, 835 F.2d 749, 753 (10th Cir. 1987); *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994).

[30]*United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996); *see also Frady*, 456 U.S. at 167-68.

motion absent a showing of cause and prejudice, or a fundamental miscarriage of justice. Petitioner has made no such showing.  Therefore, the Court will dismiss Petitioner's Eighth Amendment claim as being procedurally barred.

Even if this claim was not procedurally barred it would fail on the merits.  "The Eighth Amendment contains a narrow proportionality principle that applies to noncapital sentences."[31] "Under that principle, the Eighth Amendment forbids only extreme sentences that are grossly disproportionate to the crime."[32]  In the Tenth Circuit, courts will generally not regard a sentence within the statutory limits to be cruel and unusual.[33]

In this case, Petitioner's sentence is well within the statutory limit and there is nothing to suggest that it is an "extreme sentence" that is grossly disproportionate to her offense.  Therefore, the Court must reject this argument.

### III.  CONCLUSION

Based upon the above, it is hereby

ORDERED that Petitioner's § 2255 Motion (Docket No. 1 in Case No. 2:12-CV-460 TS) is DENIED.  It is further

ORDERED that, pursuant to Rule 8(a) of the Rules Governing § 2255 Cases, an evidentiary hearing is not required.  It is further

---

[31]*United States v. Williams*, 576 F.3d 1149, 1165 (10th Cir. 2009).

[32]*Id*.

[33]*United States v. Hughes*, 901 F.2d 830, 832 (10th Cir. 1990).

ORDERED that pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, the Court

DENIES Petitioner a certificate of appealability.

The Clerk of Court is directed to close Case No. 2:12-CV-460 TS forthwith.


DATED   October 15, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge

12